UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

JOHNNIE HARRISON,

                   Plaintiff,

     -against-

THE CITY OF New YORK, COMMISSIONER
JOHN/JANE DOE #1, DR. CALVIN JOHNSON,
CHARLES APPIAH R.P.A., GUY KELLY P.A.,
PETER WATCHEL D.O., JEAN RICHARD M.D.
And RAJA SABBAGH,

               Defendants.

------------------------------------------X

15 Civ. 4141

OPINION

A P P E A R A N C E S:



    Pro Se

    Johnnie Harrison
    13-A-4243
    Mid-State Correctional Facility
    P.O. Box 2500
    Marcy, NY 13403

    Attorneys for Defendants

    Heidell, Pittoni, Murphy & Bach, LLP (WP)
    81 Main Street
    White Plains, NY 10601
    By:  Ana Maria Vizzo
        Daniel Gerard May
        John Charles O'Brien, Jr.

**Sweet, D.J.**

Defendants Charles Appiah, R.P.A. ("R.P.A. Appiah"),
Raja Sabbagh, M.D. ("Dr. Sabbagh"), Guy Kelly, P.A. ("P.A.
Kelly") Jean Richard, M.D. ("Dr. Richard") and Calvin Johnson,
M.D. ("Dr. Johnson")(collectively, "the Individual Defendants")
have moved pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure to dismiss Plaintiff's Second Amended Complaint
("SAC") of Johnnie Harrison, pro se ("Harrison" or the
"Plaintiff").

Based on the conclusions set forth below, the motion
of the Individual Defendants is granted, and the SAC is
dismissed.

## I. Prior Proceedings

The Plaintiff commenced this action by filing a
Complaint on May 21, 2015. Since filing the initial Complaint,
the Plaintiff has twice amended his pleadings and the current
operative pleading is the SAC, which was filed on April 19,
2016. The SAC was drafted using a preprinted form titled
"Amended Complaint under the Civil Rights Act, 42 U.S.C. § 1983"

1

and names as defendants the City of New (or "the City"),
Commissioner John/Jane Doe #1 (or "the Commissioner"), and the
Individual Defendants.

The SAC alleges nine claims for relief: (1) 42 U.S.C.
§ 1983 conspiracy; (2) failure to intervene; (3) deliberate
indifference; (4) negligence; (5) intentional and negligent
infliction of emotional distress; (6) denial of medical care;
(7) negligent supervision, hiring, monitoring, training and
retention of unfit employees; (8) municipal liability under
*Monell*; and (9) respondeat superior. SAC ¶¶ 35-61. Plaintiff's
first six claims for relief do not specify the defendants to
which they are directed, and it is assumed the Plaintiff is
asserting them against all defendants. *See id.* ¶¶ 35-50. The
seventh, eighth and ninth claims for relief are specifically
directed at the City. *Id.* ¶¶ 51-61.

**II. Facts**

The central claim set forth in the SAC is that the
Defendants deprived the Plaintiff of adequate medical care for
an inguinal hernia, which had been previously diagnosed at

2

Elmhurst Hospital, while he was in custody at Rikers Island

between July 21, 2012 and September 24, 2013. *Id.* ¶¶ 3-34.


The SAC contains factual allegations regarding

Plaintiff's medical course and interaction with the Individual

Defendants. These factual allegations are supplemented by

excerpts of Plaintiff's medical records, which Plaintiff has

incorporated into the pleading and annexed as exhibits.


With regard to Defendants R.P.A. Appiah, Dr. Sabbagh,

P.A. Kelly, and Dr. Richard, the Plaintiff is alleging that each

participated in his medical care, and the SAC described his

limited interactions with each. With regard to Defendant Dr.

Johnson, Plaintiff has not alleged any direct role in his

treatment or alleged deprivation of medical care, but rather is

suing him in his capacity as Chief Medical Officer of non-

defendant Corizon.


Plaintiff's factual allegations as to R.P.A. Appiah,

in their entirety, are as follows:

> On July 21, 2012, Plaintiff was seen by Defendant
> Charle[s] Appiah, as an initial medical screening
> for new admission at City Corrections. Plaintiff
> informed Defendant Charle[s] of the hernia he had
> been suffering with for a long period of time and
> how doctors at Elmhurst Hospital recommend he

3

`,    - ⅃

> receive surgery, and the continuous pain and
> suffering the hernia was causing him. Defendant
> Charles Appiah acknowledged and confirmed the
> existence of Plaintiff's hernia and serious
> medical needs. Defendant Charles Appiah referred
> Plaintiff to West Facility (WF) for surgery.

*Id.* ¶ 6.

Plaintiff incorporated R.P.A. Appiah's seven-page
intake physical note into the SAC and annexed it thereto as
"Exhibit B." The detailed medical note documents R.P.A. Appiah's
evaluation of Plaintiff as a new admission and includes orders
for a number of diagnostic tests, medication prescriptions and
referrals to medical specialties, including mental health,
nutrition, and, as Plaintiff states in the SAC, surgery to
evaluate Plaintiff's reducible, non-tender, inguinal hernia.

Plaintiff's allegations as to Dr. Sabbagh are limited
to the following:

> At [August 28, 2012] appointment, Plaintiff was
> seen by Defendant Raja Sabbagh, who acknowledged
> the serious medical needs and referred Plaintiff
> to Bellevue Hospital for surgery.

*Id.* ¶ 7.

Plaintiff incorporated Dr. Sabbagh's August 28, 2012
medical note into the SAC and annexed it thereto as "Exhibit C."
According to Dr. Sabbagh's record, Plaintiff had been referred

4

to him for evaluation of a left inguinal hernia. Dr. Sabbagh

noted that Plaintiff reported a history of a reducible mass that

increased in size with straining. *Id.* Ex. C. Dr. Sabbagh's

treatment plan was to refer Plaintiff to Bellevue Surgery. *Id.*

Plaintiff alleges that he had two interactions with

P.A. Kelly during the period in question. The SAC states:

> Plaintiff went to the medical department to seek
> assistance regarding his condition on [September
> 10, 2012] where he was seen by Defendant Guy
> Kelly. Although he acknowledged the hernia,
> complications with bowel movement, and was made
> aware by the Plaintiff of the excessive pain the
> hernia was causing as well as the unreasonable
> delay in treating the hernia. Defendant Guy Kelly
> failed to take reasonable action. Plaintiff was
> prescribed more pain relieving medications and
> dismissed from the clinic.

*Id.* ¶ 8.

Plaintiff incorporated P.A. Kelly's September 10, 2012

progress note into the SAC and annexed it thereto as "Exhibit

D." In the note, P.A. Kelly indicates that the reason for the

appointment was pain over the left inguinal during Plaintiff's

last bowel movement, which was three days earlier. P.A. Kelly

further noted that on examination, there was tenderness over the

left inguinal but no swelling or redness. The recorded diagnoses

were hernia and constipation. P.A. Kelly's plan of treatment was

5

to prescribe the pain reliever Naproxen and the stool softener Colace.

The second occasion on which Plaintiff alleges he was seen by P.A. Kelly was approximately one year later. As to that interaction, the SAC states:

> On [September 4, 2013] Plaintiff was seen by Defendant Guy Kelly. Defendant Guy Kelly acknowledged Plaintiff's deteriorating mental and physical condition as well as the ongoing delay in addressing the serious medical needs present. Defendant Guy Kelly gave Plaintiff pain meds and scheduled him for surgery at Bellevue Hospital for [September 17, 2013].

*Id.* ¶ 16.

The note documenting the encounter between P.A. Kelly and Plaintiff is incorporated into the SAC and annexed thereto as "Exhibit K." That note indicates that Plaintiff presented to P.A. Kelly with complaints of intermittent pain related to his hernia that morning and a rash on his chest. *Id.* Ex. K. On examination, P.A. Kelly noted tenderness over the left inguinal area but no swelling. *Id.* P.A. Kelly prescribed the pain reliever ibuprofen, as well as an ointment to treat Plaintiff's rash. *Id.* The record further includes the notation "9/17/13 Surgery BVH." *Id.*

Plaintiff does not allege that he was ever personally treated by Dr. Richard. Rather, Plaintiff alleges that he was seen by non-party physician Dr. Lester Lieberman on Rikers Island on September 18, 2012 for issues relating to his hand, lower back, and legs. Following that encounter, the SAC alleges:

> Mr. Lieberman made a determination that Plaintiff
> was in need of a cane and double mattress. Mr.
> Lieberman provided Plaintiff with a referral,
> stating his recommendations. The referral was
> given to Defendant Jean Richard for final
> approval. Although the referral/recommendation
> was made by another specialist, Defendant Jean
> Richard, aware of Plaintiff's serious medical
> needs, disregarded the referral and prescribed
> the cane and double pillows instead."

*Id.* ¶ 9 & Ex. E.

Dr. Lieberman's note and the referral discussed above are incorporated into the SAC as "Exhibit E." The referral form includes what appear to be handwritten notations signed by Dr. Richard indicating that he reviewed the referral and endorsed the provision of a cane but switched the extra mattress to double pillows, as Plaintiff alleged.

The Plaintiff does not allege any direct involvement by Dr. Johnson, but appears to be suing him in his capacity as Chief Medical Officer of Corizon. Specifically, Plaintiff alleges that Dr. Johnson, by virtue of other lawsuits and

7

notices of claim, was aware of the insufficient training and improper conduct of medical employees providing treatment to individuals in the custody of the Department of Correction, which resulted in the deprivation of civil rights, and failed to take corrective action. SAC ¶¶ 21-26.

The instant motion was noticed for and marked fully submitted on December 22, 2016. No opposition to the motion was submitted.

### III. The Applicable Standard

On a Rule 12(b)(6) motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in favor of the pleader. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663

(quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 U.S. Dist. LEXIS 61710, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *Williams v. Calderoni*, 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012)). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (citation and internal quotation omitted).

In cases where, as here, Plaintiff is *pro se*, a court is obligated to interpret the claims as raising the strongest arguments that they suggest. See *Triestman v. Fed. Bureau of*

*Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). The obligation to be lenient while reading a Plaintiff's pleadings is particularly important in cases where Plaintiff is asserting a civil rights claim. See *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010). Nevertheless, "even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

As a motion to dismiss a Complaint under Rule 12(b)(6) challenges only the face of the pleading, "the Court must limit its analysis to the four corners of the complaint" in deciding such a motion. *Vassilatos v. Ceram Tech Int'l*, U.S. Dist. LEXIS 6620 (S.D.N.Y. 1993) citing *Kopec v. Coughlin*, 922 F.2d 152, 154-155 (2d Cir. 1991). However, where documents are attached to a complaint or incorporated by reference, as Plaintiff's medical records are in this case, the Court may consider those documents for the purpose of deciding a motion to dismiss. See *Chambers v. Time Warner. Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see also Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit . . . ").

**IV. The Motion to Dismiss the Claim for Deliberate Indifference to Medical Needs is Granted**

At its core, Plaintiff's action against the moving defendants is primarily premised on an alleged deprivation of medical care in violation of the Eighth or Fourteenth Amendments. Whether analyzed under the Eighth or Fourteenth Amendment, to plead a civil rights violation brought pursuant to 42 U.S.C. § 1983 for inadequate medical care, a prisoner must allege "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). For liability to attach under this standard, a plaintiff must demonstrate that a healthcare provider acted or failed to act with reckless disregard to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

In order "(t)o succeed in showing deliberate indifference, [Plaintiff] must show that the acts of defendants involved more than a lack of due care, but rather involved obduracy and wantonness in placing his health in danger." *LaBounty v. Coughlin*, 137 F.3d 68, 72-73 (2d Cir. 1988).

11

"[T]he deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). To satisfy the objective prong, "the alleged deprivation must be 'sufficiently serious,' in the sense that 'a condition of urgency, one that may produce death, degeneration, or extreme pain' exists." *Id.* at 553. For the purpose of this motion, Defendants do not dispute that an inguinal hernia can, in certain contexts with certain symptoms, constitute a "serious medical condition" in the context of § 1983 claim for deliberate indifference. However, the fact that the Plaintiff was suffering from a serious medical condition does not necessarily mean that the alleged deprivation was sufficiently serious. The Second Circuit has held that "although we sometimes speak of a 'serious medical condition' as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Even where a serious medical condition exists, if Plaintiff has received adequate treatment for the same, there cannot be said to be a sufficiently serious deprivation of medical care.

12

A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *McCloud v. Delaney*, 677 F. Supp. 230, 232 (S.D.N.Y. 1988) ("there is no right to the medical treatment of one's choice . . . "). Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). "[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Moreover, "[p]rison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates, and inmates do not have the right to the treatment of their choice." *Brown v. Selwin*, 250 F. Supp. 2d 299, 307 (S.D.N.Y. 1999) (internal quotation marks omitted).

To satisfy the subjective prong of the deliberate indifference inquiry, a Plaintiff must allege that "the charged

13

official must act with a sufficiently culpable state of mind."
*Hathaway*, 99 F.3d at 553. The required state of mind, equivalent
to criminal recklessness, is that the official "knows of and
disregards an excessive risk to inmate health or safety; the
official must both be aware of facts from which the inference
can be drawn that a substantial risk of serious harm exists, and
he must also draw the inference." *Hemmings v. Gorczyk*, 134 F.3d
104, 108 (2d Cir. 1998) (quoting *Hathaway*) (internal citation
omitted).

Insofar as Plaintiff is seeking to impose personal
liability on Individual Defendants under § 1983, he must allege
that the individual was personally involved in causing the
alleged constitutional violation while acting under the color of
state law. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also*
*Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) ("Proof of
an individual defendant's personal involvement in the alleged
wrong is, of course, a prerequisite to his liability on a claim
for damages under § 1983.").

Plaintiff has offered no allegations suggesting that
R.P.A. Appiah was deliberately indifferent to his medical needs.
The medical record incorporated into the SAC documenting that

14

encounter further demonstrates that R.P.A. Appiah performed a complete evaluation and considered Plaintiff's various medical conditions, including his reducible, non-tender, inguinal hernia. SAC Ex. B. R.P.A. Appiah's note also reflects prescription of multiple medications and a number of referrals for further evaluation for Plaintiff's surgical, mental health, and dietary needs. *Id.* Neither Plaintiff's limited allegations as to R.P.A. Appiah nor the medical record documenting their single encounter, can be construed as a deprivation of medical care, as R.P.A. Appiah actually made a referral for the very care that Plaintiff claims he needed. *Id.* Moreover, the allegations do not suggest that R.P.A. Appiah knew of and disregarded a risk to Plaintiff's safety as he evaluated Plaintiff's conditions, including his hernia, and ordered a plan of treatment to address those conditions. *Id.*

Absent any alleged facts which even suggest that R.P.A. Appiah deprived Plaintiff of medical care or acted with the requisite state of mind in disregarding a risk to Plaintiff's safety, the SAC has not stated a claim for deliberate indifference as to R.P.A. Appiah. See *Brown v. DeFrank*, 06 Civ. 2235 (AJP), 2006 U.S. Dist. LEXIS 83345, at *70 (S.D.N.Y. Nov. 25, 2006)(dismissing deliberate indifference

claim against individual provider where Plaintiff failed to satisfy either the objective or subjective prongs of the deliberate analysis with regard to the treatment by the individual provider).

Based on the Plaintiff's allegations and the medical record annexed to the SAC, Dr. Sabbagh saw Plaintiff once, for a surgical referral at West Facility on August 28, 2012. SAC 7 & Ex. C. Dr. Sabbagh's involvement in Plaintiff's treatment was to evaluate his hernia and order a referral to Bellevue Surgery. *Id.* As with Plaintiff's allegations concerning R.P.A. Appiah, Plaintiff has failed to offer any factual allegations suggesting Dr. Sabbagh deprived him of any medical care or knew of and disregarded a substantial risk to his safety. Accordingly, Plaintiff has not satisfied either prong of the deliberate indifference analysis as to Dr. Sabbagh and his claim against Dr. Sabbagh must be dismissed. See *Brown* 2006 U.S. Dist. LEXIS 83345, at *70.

As to P.A. Kelly, Plaintiff claims he was seen by P.A. Kelly on two occasions. On the first, which occurred on September 10, 2012, the incorporated medical records indicate that Plaintiff complained of pain over his left inguinal hernia

16

while defecating and experiencing constipation. SAC Ex. D. P.A.
Kelly examined Plaintiff, noting tenderness over the left
inguinal area but no swelling or redness, and prescribed
medications to alleviate Plaintiff's complaints in the form of a
pain killer and stool softener. *Id.* Plaintiff acknowledges that
P.A. Kelly prescribed pain medication, but nevertheless alleges
that PA Kelly "failed to take reasonable action," presumably
because the pain relieving medications did not alleviate his
"discomforts," which he alleges had risen to "unbearable
levels." *Id.* ¶ 8. However, the medical records which Plaintiff
has incorporated into the complaint contradict the allegation
that he was in "unbearable" discomfort at the time or that P.A.
Kelly was aware of any extreme pain. *See id.* Ex. D. P.A. Kelly
noted that Plaintiff had experienced pain when defecating three
days earlier, and that he was constipated. *Id.* At the time of
the examination, P.A. Kelly did not even document pain, but
rather "tenderness." *Id.* In prescribing a stool softener and a
pain reliever, P.A. Kelly ordered a plan of care to treat the
specific complaints Plaintiff presented.

The September 10, 2012 medical record establishes that
there is no basis to support a claim that P.A. Kelly was
deliberately indifferent to Plaintiff's medical needs at that

time. More specifically, P.A. Kelly provided Plaintiff treatment for the conditions Plaintiff complained of, and there is no allegation that P.A. Kelly was aware of any risk to Plaintiff that he disregarded.

Plaintiff's only other interaction with P.A. Kelly was one year later, on September 4, 2013, when Plaintiff claims P.A. Kelly gave him pain medication and scheduled him for surgery at Bellevue Hospital. *Id.* ¶ 16 & Ex. K. Plaintiff has not alleged that P.A. Kelly deprived him of treatment during this encounter. Plaintiff alleges that P.A. Kelly scheduled him for exactly the treatment he claims he needed. The September 4, 2013 encounter does not adequately establish that P.A. Kelly exhibited deliberate indifference to Plaintiff's medical needs.

Dr. Richard's only alleged involvement with Plaintiff was entirely unrelated to treatment of Plaintiff's hernia and arose out of a visit with Dr. Lieberman regarding "issues with [Plaintiff's] hand, lower back, and legs." *Id.* ¶ 9. Dr. Lieberman's note indicates that Plaintiff had chronic pain for the prior three years in the left wrist and lower back after a motor vehicle accident. *Id.* Ex. E. In addition to referring Plaintiff to a hand specialist and neurosurgeon to evaluate

bilateral carpal tunnel syndrome and spinal stenosis
respectively, Dr. Lieberman issued an internal referral for
Plaintiff to receive a cane and extra mattress for four weeks.
*Id.* Dr. Richard changed that prescription to a cane and double
pillows rather than an extra mattress. *Id.*

Plaintiff has not alleged that Dr. Richard deprived
him of medical care, as he does not dispute that he received a
cane and extra pillows, but alleges that Dr. Richard provided
him with extra pillows instead of a double mattress. *See id.* ¶
9. There is no indication that Plaintiff's long term hand, lower
back and leg issues were causing him extreme pain or that the
decision by a medical professional to give double pillows
instead of an extra mattress constituted a conscious disregard
of a known risk to Plaintiff. Accordingly, Plaintiff has not
satisfied either prong of the deliberate indifference analysis
as to Dr. Richard.

Plaintiff has not alleged that Dr. Johnson played any
direct role in his medical care. It appears that he seeks to
hold Dr. Johnson liable for alleged constitutional violations in
his capacity as Chief Medical Officer of Corizon. As Plaintiff
is seeking to hold Dr. Johnson individually liable, Plaintiff

must nevertheless allege personal involvement by Dr. Johnson in his alleged deprivation of care. See *Gaston*, 249 F.3d at 164.

The personal involvement of a supervisory defendant may be shown by evidence that the defendant "(1) directly participated in the violation; (2) failed to remedy the violation after learning of it through a report or appeal; (3) created a custom or policy fostering the violation or allowed the custom or policy to continue after learning of it; or (4) was grossly negligent in supervising subordinates who caused the violation." *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (citing *Williams v. Smith*, 781 F.2d 319, 323-24) (2d Cir. 1986). "Liability may not be premised on the *respondeat superior* or vicarious liability doctrines, . . . nor may a defendant be liable merely by his connection to the events through links in the chain of command." *Prince v. Edwards*, 2000 U.S. Dist. LEXIS 6608, *19, No. 99 Civ. 8650 (DC) (S.D.N.Y. May 17, 2000) (internal quotation marks and citation omitted).

Plaintiff has not alleged that Dr. Johnson participated in any deprivation of his medical care that could form the basis of a constitutional violation. He also has not alleged that Dr. Johnson received any reports or appeals that

would have put him on notice of any deprivation of medical care to Plaintiff. Although Plaintiff has made conclusory allegations that Dr. Johnson was aware, through "lawsuits, notices of claims, and complaints" that medical employees were insufficiently trained and supervised, resulting in the deprivation of human rights, he has offered no factual support for these allegations. SAC ¶ 21.

The bare allegation that Dr. Johnson failed to adequately train and supervise the individual medical providers, absent any factual support, is insufficient to establish supervisory liability for deliberate indifference to a medical need. There are no specific factual allegations that Dr. Johnson had any personal involvement in the training or supervision of the individual medical providers. Even if Plaintiff had alleged that Dr. Johnson was directly involved in the training or supervision of the medical providers who treated Plaintiff, there is no allegation suggesting that Dr. Johnson was "grossly negligent" in any way. Plaintiff has not, therefore, established supervisory liability on behalf of Dr. Johnson. See *Reid v. Artus*, 984 F. Supp. 191, 195 (S.D.N.Y. 1997) (dismissing a prisoner's section 1983 claim against a supervisory official when the pleadings failed to establish "any factual basis upon

which a fact finder could reasonably conclude personal
involvement by the supervisory official defendant[,] . . . .
that [defendant] created or continued a policy or custom which
allowed the violation to occur, or that [defendant] was grossly
negligent in managing the subordinates who caused the unlawful
condition.").

## V. The Motion to Dismiss the Remaining Causes of Action is Granted

The SAC purports to set forth eight additional causes
of action. SAC ¶¶ 35-61. Plaintiff's sixth cause of action for
"denial of medical care" is redundant of his deliberate
indifference claim. *See id.* ¶¶ 49-50. Additionally, Plaintiff's
claims for *Monell* liability, respondeat superior, and negligent
supervision, hiring, monitoring, training and retention of unfit
employees are specifically pled as to the City of New York only
and inapplicable to the moving defendants. *See id.* ¶¶ 51-61.

As to Plaintiff's remaining claims sounding in
conspiracy, failure to intervene, negligence, and intentional
and negligent infliction of emotional distress, *see id.* ¶¶ 35-
30, 43-48, each fails to adequately allege to state a claim upon

which relief can be granted and must therefore be dismissed as
to the moving defendants.

The Second Circuit has repeatedly held that "in order
to state a claim of conspiracy under § 1983 the complaint must
contain more than mere conclusory allegations." See *Dwares v.
City of New York*, 985 F.2d 94, 99 (2d Cir. 1993); *Spear v. West
Hartford*, 954 F.2d 63, 67 (2d Cir. 1992). A Plaintiff should not
plead mere evidence, he should make an effort to provide some
"details of time and place and the alleged effect of the
conspiracy." *Dwares*, 985 F.2d 94, 100.

The SAC does not allege any details to support a claim
for conspiracy. The Plaintiff does not allege any specific acts
by any of the moving defendants which suggest that any
defendants acted in concert with any other individual for any
purpose. Plaintiff's allegations are conclusory and insufficient
to state a claim for conspiracy.

Plaintiff's allegations as to his failure to intervene
claim state only "Defendants had a reasonable opportunity to
prevent the violations of Plaintiff's constitutional rights, but
they failed to intervene. Accordingly, the Defendants are liable

to Plaintiff for failing to intervene to prevent the violation of Plaintiff's constitutional rights." SAC ¶¶ 38-39. There are no specific allegations as to any of the moving defendants, and no allegations of how and when the individual moving defendants could have or should have intervened. As Plaintiff's claim for failure to intervene consists only of legal conclusions, without any factual allegations as to the moving defendants, it must be dismissed. See *Ashcroft*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (citing *Bell Atl. Corp.*, 550 U.S. at 555 (2007).

Plaintiff's state law claim for negligence states only "Defendants are liable to Plaintiff because Defendants owed Plaintiff a cognizable duty of care as a matter of law and breached that duty." SAC ¶ 44. Once again, the SAC offers no specific allegations as to any of the moving defendants or how they were negligent to Plaintiff. Plaintiff offers nothing more than a formulaic recitation of the elements of a negligence claim, which is, as a matter of law, insufficient to state a claim. See *Ashcroft*, 556 U.S. at 678.

24

To the extent that Plaintiff's claim for negligence could be construed as a claim for medical malpractice against the individual moving defendants, the statute of limitations for a medical malpractice claim in New York against a non-municipal provider is two years and six months. NY CLPR 214-a. As Plaintiff commenced this action on May 21, 2015, the statute of limitations expired for any medical malpractice claims arising of treatment prior to November 21, 2012. Accordingly, the only alleged treatment provided by any of the moving defendants which could be the basis for a timely claim is P.A. Kelly's September 4, 2013 encounter during which, according to the SAC, he prescribed Plaintiff pain medication and scheduled him for surgery at Bellevue Hospital. SAC ¶ 16. Plaintiff has offered no allegation or facts suggesting that this treatment amounts to a departure from the standard of care which caused him any injury. The claim premised on medical malpractice is dismissed. *See Torres v. City of New York*, 154 F. Supp. 2d 814, 819 (S.D.N.Y. 2001) ("Under New York law, the requisite elements of proof in a medical malpractice action are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage.").

Plaintiff's fifth claim for intentional and negligent infliction of emotional distress must also be dismissed as it is insufficiently pled. *See* SAC ¶¶ 45-48. "Under New York law, the torts of intentional and negligent infliction of emotional distress share three common elements: (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." See *Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010). The SAC is devoid of factual allegations to support any of these three elements and, as discussed above, a formulaic recitation of the legal elements of these causes of action is insufficient to state a claim. See *Ashcroft*, 556 U.S. at 678.

**Conclusion**

The motion to dismiss the SAC against the Individual Defendants is granted. The Plaintiff is granted leave to replead within 20 days.

It is so ordered.

**New York, NY**
**September / , 2017**

ROBERT W. SWEET
U.S.D.J.